UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| TOSHIA RENEE FIELDS, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | Civil Action No. 7: 18-007-DCR |
| V. | ) ) | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff Toshia Renee Fields and Defendant Nancy A. Berryhill, Acting Commissioner of the Social Security Administration. [Record Nos. 11, 13] Fields argues that the Administrative Law Judge ("ALJ") assigned to her case erred in concluding that she was not disabled within the meaning of the Social Security Act ("Act"). Specifically, she asserts that the ALJ did not properly consider the opinion evidence and that the ALJ's decision is not supported by substantial evidence. Fields asks the Court to direct the Commissioner to award her benefits or, alternatively, remand this matter to the Commissioner for further consideration. The Commissioner contends that the ALJ properly evaluated the evidence and that the ALJ's decision should be affirmed because it is supported by substantial evidence.

Having reviewed the record and the parties' arguments, the Commissioner's motion will be granted and Fields' motion will be denied for the reasons that follow.

## I. Procedural History

Fields filed an application for Disability Insurance Benefits ("DIB") under Title II of the Act on April 4, 2013. [*See* Administrative Transcript, hereinafter "Tr.," 280.] The application was denied initially and on reconsideration. Fields then requested a hearing before an ALJ. [Tr. 169, 174, 182] She appeared before ALJ Karen R. Jackson at an administrative hearing in Frankfort, Kentucky in March 2015. [Tr. 54-84] ALJ Jackson denied benefits in a written decision the following month. [Tr. 144-56] However, the Appeals Council vacated the ALJ's decision and remanded the matter for further consideration. [Tr. 163-65] ALJ Jackson held an additional hearing on October 26, 2016. [Tr. 29-53] She issued a written decision in March 2017, once again denying benefits. [Tr. 8-22] This time, the Appeals Council affirmed the decision. [Tr. 1-3] Accordingly, the claimant has exhausted her administrative remedies and this matter is ripe for review under 42 U.S.C. § 405(g).

## II. Background

Fields was forty-five-years-old at the time of her application for benefits. [*See* Tr. 280.] She has a high school education and has worked for approximately five years as a school bus driver. [Tr. 306] She alleges that she became unable to work in April 2012 because of severe complications from neck surgery. [Tr. 280, 305]

During her second hearing before the ALJ, Fields reported significant pain in her neck, right shoulder, and right hip. [Tr. 38] Fields stated that, after being on her feet for about twenty minutes, her neck and upper back muscles became very weak. [Tr. 39] She reported having attempted physical therapy following her neck surgery in 2012, but it caused increased swelling and pain.

Fields' primary care provider, Anthony Yonts, D.O., completed an "arthritis questionnaire" in February 2015. [*See* Tr. 464, 534, 536, 538-39, 593-98.] Yonts reported that he saw Fields for chronic neck pain and "DJD" every two months. [Tr. 593] He commented that she experienced fatigue, palpitations, chronic neck pain, and that Fields had severe limitations with respect to activities of daily living. [Tr. 593] Yonts identified the following "objective" signs in support of his determination: reduced cervical range of motion; reduced grip strength; sensory changes; reflex changes; impaired sleep; abnormal posture; tenderness; crepitus; and muscle spasm. [Tr. 594] He ultimately concluded that Fields was unable to perform even "low stress jobs" because she could not turn her neck fully and could not use her upper extremities consistently. [Tr. 595]

Yonts assessed the following specific limitations: Fields was unable to sit or stand for more than 30 minutes; she was unable to sit, stand, or walk for more than two hours per day; she could never lift more than ten pounds; could rarely lift less than ten pounds; she could never twist, crouch, or climb ladders, and could rarely stoop or climb stairs. [Tr. 595-97]

Fields also received primary care in 2014 and 2015 at Quantum Healthcare. Practitioners Christopher Lewis and Ashley Taylor treated Fields for neck, shoulder, and back pain. [Tr. 549-50, 655] Taylor observed in May 2015 that Fields was unable to elevate her right shoulder above 90 degrees and could not elevate her left shoulder above 100-110 degrees. [Tr. 656]

Chih Yen, DPM, treated Fields for sesamoiditis and flexor tendinitis of the right lower extremity in June 2012. [Tr. 406-07] An MRI report indicated that there was "evidence of edema," but Yen characterized the MRI as "completely normal." [Tr. 406, 410] Accordingly, Yen suspected a "radiculopathy component" of the pain and advised Fields to "take care of her

back." *Id.* A doppler examination revealed no evidence of decreased blood flow in Fields' lower extremity arterial structures. [Tr. 411]

Fields underwent an MRI of the cervical spine in May 2012, which revealed disc herniation at multiple levels. [Tr. 540-41] She consulted with a surgeon, Thomas Menke, M.D., the following month. [Tr. 536] Following an unsuccessful course of physical therapy, Menke performed decompression and multilevel fusion surgery. [Tr. 531] Fields continued to follow-up with Menke after the surgery. Although she continued to have some degree of discomfort, Fields experienced overall improvement, particularly with respect to the right upper extremity radiculopathy she had previously experienced. [Tr. 464-85, 524-32, 537, 557-59, 569-71, 589-92, 663-81]

An MRI performed in April 2013 revealed mild residual foraminal stenosis and diffuse disc bulging, but no apparent nerve impingement at any level. [Tr. 464, 515] An additional MRI was performed in May 2015, which showed fusion of the C4, C5, C6, and C7 vertebral bodies with an anterior plate and screws. [Tr. 608] There was a small posterior disc osteophyte complex between C4-C5, C5-C6, C6-C7, and C7-T1, which was indenting on the thecal sac. *Id*. Menke noted that Fields had moderate tenderness upon palpation of the cervical spine and moderately decreased cervical range of motion. [Tr. 465]

Fields also complained of back and shoulder pain in 2014 and 2015. [Tr. 663-66] MRIs performed in 2015 revealed mild degeneration in the thoracic spine, moderate degeneration in the lumbar spine, and a partial rotator cuff tear of the right shoulder. [Tr. 605-11] However, Fields advised Menke that she was not interested in referral to a shoulder specialist and that she "just want[ed] to live with it." [Tr. 664] With respect to Fields' back, Menke stated that there was "no indication for further work-up" and he "would not recommend anything

invasive." [Tr. 681]  Menke discussed weight loss with Fields and noted that she was "trying to walk some."  *Id.*

Ravi Jayavarapu, M.D., performed a consultative examination in December 2016.  [Tr. 713-24]  Jayavarapu observed that Fields had normal posture and gait and that she had no difficulty getting on and off of the examination table.  [Tr. 714]  Jayavarapu found that Fields' right upper extremity strength was 3/5, while her left upper extremity and bilateral lower extremity strength was 5/5.  [Tr. 715]  He detected range of motion limitations in Fields' right shoulder, cervical spine, and lumbar spine.  [Tr. 715]

Jayavarapu provided a medical source statement concerning Fields' ability to perform work-related activities.  [Tr. 719-24]  He concluded that Fields could occasionally lift and carry up to ten pounds, but no more than that because of right upper extremity weakness.  [Tr. 719]  He believed that she could sit for a total of six hours in an eight-hour workday.  He also reported that she could stand for a total of two hours and walk for one hour.  Inconsistent with that finding, he reported that she could stand for four hours and walk for two hours without interruption.  [Tr. 720]

Jayavarapu determined that Fields could never reach, handle, finger, feel, push or pull with her right (dominant) hand, but she could do so frequently with her left hand.  [Tr. 721]  He believed that she could operate foot controls continuously with both feet.  He also found that she could occasionally perform postural activities such as climbing, balancing, stooping, kneeling, crouching, and crawling.  [Tr. 722]  In addition, he stated that Fields should never be exposed to unprotected heights, moving mechanical parts, operating a motor vehicle, or vibrations.  She could, however, occasionally be exposed to dust, odors, fumes, extreme cold,

extreme heat, and moderate noise. [Tr. 723] Jayavarapu did not identify any particular medical or clinical findings to support these limitations.

ALJ Jackson determined that Fields did not have an impairment or combination of impairments that met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. However, she concluded that Fields had the following severe impairments: right shoulder partial rotator cuff tear/mild degenerative joint disease; status post cervical decompression and fusion with degenerative disc disease/disc osteophyte complex; degenerative disc disease of the lumbar spine and thoracic spine; history of right foot tendinitis; degenerative joint disease of the bilateral hips and sacroiliac joints; a history of palpitations, status post ablation; hypertension; and obesity. After considering the entire record, the ALJ found that Fields had the residual functional capacity ("RFC") to perform a limited range of sedentary work as defined in 20 C.F.R. § 404.1567(a). Specifically, the ALJ concluded that Fields could

> lift and carry, push and pull ten pounds occasionally and less than ten pounds frequently. The claimant should not have been required to reach overhead with her right upper extremity. She could stand and or walk two hours out of an eight-hour workday and sit six hours out of an eight-hour workday, but would need a sit/stand option at 45 minute intervals. The claimant should never have been required to operate foot pedal controls. She could occasionally reach overhead with the left upper extremity. The claimant could occasionally climb ramps or stairs, but never ropes, ladders, or scaffolds. She could occasionally balance, stoop, kneel, crouch, or crawl. The claimant must have avoided concentrated exposure to vibration and temperature extremes and avoid moderate exposure to hazards such as unprotected heights and dangerous machinery.

[Tr. 17] Based on this RFC and the testimony of a vocational expert ("VE"), the ALJ determined that there were jobs existing in significant numbers in the national economy that Fields was capable of performing. [Tr. 21, 48-51] Accordingly, the ALJ concluded that Fields was not disabled under the Social Security Act. [Tr. 22]

### III. Standard of Review

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that she is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that she suffers from a severe impairment or a combination of impairments. 20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, she will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's residual functional activity ("RFC") and relevant past work to determine whether she can perform her past work. If she can, she is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent her from doing past work, the Commissioner will consider her RFC, age, education, and past work

experience to determine whether she can perform other work. If she cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

A court reviewing a denial of Social Security benefits must only determine whether the ALJ's findings were supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. Discussion

ALJs must follow certain standards in assessing the evidence supplied in support of a claim for social security benefits. For instance, greater deference generally is given to the opinions of treating physicians than the opinions of non-treating physicians.[1] *Rogers*, 486 F.3d at 242. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record, 'then it will be afforded controlling weight.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). When a treating physician's opinion is not

---

[1] This rule applies to claims filed before March 27, 2017. *See* 20 C.F.R. § 416.927.

- 8 -

given controlling weight, the ALJ must consider a number of factors in determining how much weight is appropriate. *Id.* These factors include: "the length, frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Id.*

If a treating physician's opinion is not given controlling weight, the ALJ must provide good reasons for the amount of weight given to the treating source's opinion. 20 C.F.R. § 416.927(c)(2). This permits meaningful review of the ALJ's decision and allows the claimant to understand the reasons for the ALJ's decision. *Wilson*, 378 F.3d at 544-45. A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, *5 (July 2, 1996). "[T]here is no requirement that the ALJ give good reasons for the weight afforded to the opinions of examining or consulting physicians who do not qualify as treating physicians." *Miller v. Comm'r of Soc. Sec.*, No. 4: 13-CV-90, 2015 WL 63096, *9 (E.D. Tenn. Feb. 11, 2015) (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875-76 (6th Cir. 2007)).

Here, the ALJ assigned "fairly great weight to the portion of [Yonts'] opinion which supports sedentary work with a sit/stand option." [Tr. 19] However, the ALJ concluded that certain aspects of the opinion were not supported by objective medical findings in the treatment record. *Id.* These areas include the extreme limitations that Fields could only sit for a total of two hours per day and that she could not perform even a low-stress job. Yonts failed to identify objective medical evidence to support these conclusions and, as the ALJ noted, they were contradicted by other substantial evidence in the record. Although Fields' cervical range of

motion was reduced, the recent imaging tests of her spine "looked good" and there was nothing in the record to suggest that she was precluded from completing an eight-hour workday. [*See* Tr. 19, 557.] Further, the ultimate question of whether a claimant is capable of performing work is reserved to the Commissioner. *See* 404.1527(d)(1).

Fields also contends that the ALJ improperly rejected Jayavarapu's conclusion that she was essentially precluded using her right upper extremity. However, the ALJ reasonably concluded that this recommendation was overly restrictive and did not comport with Fields' reported daily activities, which included laundry, shopping, cooking, and light housework. [Tr. 20] While Jayavarapu rated Fields' right arm strength as 3/5, she was able to raise her arm to shoulder height. [Tr. 715, 656] Further, Fields testified during her second hearing that use of her right hand was restored after her neck surgery in 2012. [Tr. 38] And she advised Menke that she was not interested in pursuing further treatment for her shoulder, even though it was her dominant extremity. Despite Fields' protestations, the ALJ was not required to articulate additional reasons for the amount of weight given to the opinion of this consultative examiner. *See Smith*, 482 F.3d at 876.

The RFC is supported by substantial evidence. The ALJ concluded that Fields could lift and carry, and push and pull 10 pounds occasionally and less than 10 pounds frequently. [Tr. 19] Jayavarapu opined that Fields could lift and carry 10 pounds occasionally, and the two non-examining consulting sources concluded that she could do so frequently. [Tr. 719, 121-22, 137-38] Yonts is the only medical source who reported that Fields was unable to lift and carry at least 10 pounds. And while Jayavarapu concluded that Fields could not push or pull with her right upper extremity, the consulting sources determined that she could pull 10 pounds frequently and 20 pounds occasionally. [Tr. 721, 121-22, 137-38] These findings,

combined with Fields' self-reported daily activities (which would require use of both extremities), support the ALJ's conclusion that she could occasionally lift, carry, push, and pull 10 pounds. [*See* Tr. 17.]

The ALJ also reasonably concluded that manipulative limitations were not warranted. Although Jayavarapu indicated that Fields could never handle, finger or feel with her right hand, the two consultative sources reported that Fields had no manipulative limitations. [Tr. 721, 122, 138] Yonts, as Fields' treating physician, did not assess any manipulative restrictions. [*See* Tr. 598] And Fields' most recent orthopedic treatment notes indicate that her sensation was normal and she had few complaints regarding her right hand. [*See* Tr. 668-682.] Further, Fields discussed her daily activities, such as making coffee and washing dishes, and made no mention of any problems accomplishing these tasks using her right (dominant) hand. [Tr. 42]

Finally, the ALJ's conclusion that Fields required a sit/stand option every 45 minutes is supported by substantial evidence. Although the consulting sources recommended that she be allowed to sit and stand at will,[2] Yonts recommended that she be permitted to sit or stand every thirty minutes. The ALJ adopted a limitation that was slightly less restrictive than Yonts' recommendation, based on Fields' relatively mild MRI results and her relatively high level of daily functioning. Further, Jayavarapu, who examined Fields, opined that she could sit for *five hours* without changing positions. [Tr. 720] Additionally, Menke, Fields' orthopedic surgeon, did not recommended any further treatment for her neck or any surgical intervention for her back.

---

[2] The consulting source opinions go on to state that Fields should not "engage in prolong[ed] standing or walking in excess of . . . to one hour without interruption." [Tr. 122, 138]

Fields suggests that the ALJ impermissibly "play[ed] doctor" by fashioning her own RFC instead of adopting a medical source's opinion verbatim.  Not so.  The final responsibility for determining a claimant's RFC rests with the ALJ.  *See* SSR 96-5p, 1996 WL 374183 (July 2, 1996).  ALJ Jackson acted within her discretion by developing an RFC based on the medical evidence, medical source statements, hearing testimony, and the claimant's pain questionnaire and function report.

V. **Conclusion**

Based on the foregoing, it is hereby

**ORDERED** as follows:

1. Defendant Acting Commissioner of Social Security Nancy A. Berryhill's Motion for Summary Judgment [Record No. 13] is **GRANTED**.

2. Plaintiff Toshia Renee Fields' Motion for Summary Judgment [Record No. 11] is **DENIED**.

3. The administrative decision will be **AFFIRMED** by separate Judgment.

This 20th day of June, 2018.



Signed By:
*Danny C. Reeves* DCR
United States District Judge